ORIGINAL

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2007 DEC 20 AM 10: 59
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| MARK JACKSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 307-023 |
| | ) | |
| RALPH KEMP, Warden, Wheeler State Prison, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, an inmate incarcerated at Bostick State Prison located in Hardwick, Georgia, filed the above-captioned case pursuant to 42 U.S.C. § 1983. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). Because Plaintiff's complaint was filed IFP, it must be screened to protect potential Defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) *(per curiam)*, but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

Accordingly, the Court reviewed Plaintiff's complaint in conformity with the IFP statute. Because of pleading deficiencies, Plaintiff was directed to file an amended complaint. (Doc. no. 9). Plaintiff has submitted an amended complaint (doc. no. 10), and it is this document that the Court will now screen.

# I. BACKGROUND

*Liberally* construing Plaintiff's amended complaint, the Court finds the following. Plaintiff names the following Defendants: (1) Ralph Kemp, Warden, Wheeler State Prison ("WSP"); (2) FNU Sightner, WSP; (3) FNU Blackburn, Nurse, WSP; (4) FNU White, Nurse, WSP; (5) FNU Brown, Nurse, WSP; (6) FNU Patterson, Nurse, WSP; (7) FNU Clark, Medical Director, WSP; (8) FNU Byrd, Administrative Personnel, WSP; (9) FNU Johnson, Investigator, WSP; (10) FNU Cotton, Manager, WSP; (11) FNU Cole, Captain, WSP; (12) FNU Facen, Captain, WSP; (13) FNU Carter, Captain, WSP; (14) FNU Phillips, Captain, WSP; (15) FNU Rozier, Warden of Care and Treatment, WSP; (16) FNU Wilkerson, Administrative Personnel, WSP; (17) FNU Gillis, Administrative Personnel, WSP; (18) FNU Bryant, Administrative Personnel, WSP; (19) FNU White, Administrative Personnel, WSP; (20) FNU Evans, Administrative Personnel, WSP; (21) FNU Horn, Sergeant, WSP; (22) FNU Lang, Sergeant, WSP; (23) FNU Evans, Sergeant, WSP; (24) FNU Williams, Sergeant, WSP; (25) FNU Kemp, Sergeant, WSP; (26) FNU Facen, COII, WSP; (27) FNU Thompson, Warden, Rivers State Prison ("RSP"); (28) FNU Underwood, Counselor, RSP; (29) FNU Walker, Sergeant, RSP; (30) FNU Battle, Warden, Bostick State Prison ("BSP"); (31) FNU Williams, Warden, BSP; (32) FNU Jones, Warden, BSP; (33) FNU Cook, Captain, BSP; (34) FNU Askew, Lieutenant, BSP; (35) FNU Ivey, Sergeant, BSP; (36) FNU Edwards, COII, BSP; (37) FNU Dalrymple, Doctor, BSP; (38) FNU Taylor, Director, BSP; (39) FNU Milner, Nurse, BSP; (40) FNU Murray, Nurse, BSP; and (41) the State of Georgia Department of Corrections ("GDC"). (Doc. no. 10, pp. 1 & 4).

Plaintiff alleges that, on February 19, 2006 while incarcerated at WSP, he slipped and fell on a wet floor, resulting in injuries to his leg and hip.[1] (Id. at 5). According to Plaintiff, after he sent for help and did not receive a response, he crawled to "Medical," where he was instructed to fill out a "Sick Call Request." (Id.). Plaintiff contends that, while in "Medical," he received no assistance, so he was forced to crawl back to his dorm in pain. (Id.). Plaintiff maintains that none of the prison staff helped him and that, after reporting his injuries, he was confined in administrative segregation for approximately two months without medical treatment before he was transferred to RSP. (Id.). Plaintiff submits that, if the WSP medical staff could not treat his injuries, protocol required that he be provided with outside medical attention. (Id. at 6).

Once at RSP, Plaintiff alleges that he was treated in the same manner. (Id. at 5). According to Plaintiff, despite repeated requests and grievances, he was denied medical treatment. (Id.). Plaintiff contends that, although he was transferred to the Atlanta Medical Center, where a pin was surgically inserted into his hip, he received no treatment for his leg. (Id.). Sometime thereafter, Plaintiff maintains that he was transferred to BSP, where he is currently incarcerated and the staff allegedly refuses to treat his injured leg.[2] (Id.).

---

[1] Plaintiff states that, after several reports concerning a broken air conditioning unit, Defendant Kemp and maintenance had, or should have had, knowledge of the air conditioning leak that apparently resulted in Plaintiff's fall. (Doc. no. 10, p. 6).

[2] The Court notes that Plaintiff previously commenced an action concerning the facts forming the basis of this complaint. Jackson v. Kemp, Civil Case No. 306-023 (S.D. Ga. Apr. 13, 2006), *hereinafter* "CV 306-023." In that case, Plaintiff also alleged that, on February 19, 2006, he slipped on a wet floor and sustained various injuries. CV 306-023, doc. no. 1, p. 5. However, in that case, Plaintiff stated that, the day following his injury, he was examined by a nurse, who provided him pain medication, instructed him to take a hot shower, and assured him that he had no significant injuries. Id. Plaintiff contended that, on March 9, 2006, he was seen by a physician and X-rays were taken. Id. Unsatisfied with the medical treatment provided, Plaintiff submitted that he could barely walk and was still

Plaintiff generally alleges that, while incarcerated at WSP, RSP, and BSP, the staff at the respective prisons refused to assist him or provide him with medical treatment. (Id. at 6-8). According to Plaintiff, reports and grievances were filed concerning his injury, but prison staff wrote inaccurate, false, or misleading statements, or failed to report the incident properly. (Id.). Plaintiff maintains that Defendants failed to assess his grievances according to the standard operating procedure, hindered, or denied them completely. (Id.). Plaintiff contends that, after reporting his injuries and filing grievances, he was retaliated against and received disciplinary reports. (Id.). Plaintiff submits that, while incarcerated at RSP and BSP, the wardens ordered officers to tear up his legal materials concerning his grievances and injuries.[3] (Id. at 7 & 8).

As relief, Plaintiff seeks an unspecified amount of punitive damages. (Id. at 12). Plaintiff also asks for $100,000 in compensatory damages for the denial of immediate medical treatment and equipment, $50,000 in compensatory damages from each Defendant in their official capacity for deliberate indifference to his serious medical needs, $80,000 in compensatory damages from the GDC for injuries suffered as a result of retaliatory treatment, and $10,000,000 in compensatory damages for years of disrespect and humiliation. (See id. at 13). Finally, Plaintiff requests various forms of injunctive relief. (Id. at 12-13).

---

suffering. Id.

[3]The Court notes that Plaintiff generally fails to allege how individual Defendants participated in the events forming the basis of his complaint. (See doc. no. 10, pp. 6-8). Rather, Plaintiff has merely submitted pages, with the names of Defendants written at the top of them, containing allegations related to WSP, RSP, and BSP. (Id.).

4

## II. SCREENING OF COMPLAINT

### A.  Original Defendants Removed from Amended Complaint

In the Court's Order directing Plaintiff to amend his complaint, he was warned that his amended complaint would supersede his previously filed complaint. (Doc. no. 9, p. 2 (citing Malowney v. Federal Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994)). Plaintiff was also specifically told that he must name all Defendants in the caption and the body of the amended complaint. (Id.). Upon review of the amended complaint, the Court finds that Plaintiff no longer names two of the original Defendants as parties to the lawsuit. As Plaintiff fails to name in the caption and/or describe in the body of the amended complaint any actions taken by original Defendants FNU White, Captain, and FNU Du, Medical Personnel, these two Defendants should be dismissed from this lawsuit.

### B.  Claims Against the GDC

Plaintiff has named, among others, the GDC as a Defendant in this case. "The Eleventh Amendment insulates a state from suit brought by individuals in federal court, unless the state either consents to suit or waives its Eleventh Amendment immunity." Stevens v. Gay, 864 F.2d 113, 114 (11th Cir. 1989) (footnote omitted) (citing Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 98-100 (1984)). Furthermore, the Supreme Court has clearly stated that "a suit in which the State or one of its agents or departments is named as the defendant is proscribed by the Eleventh Amendment . . . This jurisdictional bar applies regardless of the nature of the relief sought." Pennhurst State Sch. & Hosp., 465 U.S. at 100 (1984) (citations omitted); see Alabama v. Pugh, 438 U.S. 781, 781-82 (1978) (*per curiam*); Edelman v. Jordan, 415 U.S. 651, 663 (1974). Moreover, 42 U.S.C. § 1983 does

5

not abrogate the sovereign immunity of the states. See Quern v. Jordan, 440 U.S. 332, 341 (1979) ("[W]e simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States."). Thus, 42 U.S.C. § 1983 does not override state sovereign immunity afforded by the Eleventh Amendment.

Furthermore, the Supreme Court has stated that "[t]here can be no doubt . . . that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless [the State] has consented to the filing of such a suit." Pugh, 438 U.S. at 781. The Eleventh Circuit, citing Pugh, has definitively stated that "[t]he Eleventh Amendment bars [an] action against the Georgia Department of Corrections and Board of Corrections." Stevens, 864 F.2d at 115; see also Leonard v. Dep't of Corrs., 232 Fed. Appx. 892, 894 (11th Cir. 2007) (*per curiam*) ("The Department of Corrections is not amenable to suit because it has immunity under the Eleventh Amendment."). As Plaintiff's claims against the GDC must fail as a matter of law, the GDC should also be dismissed from this lawsuit.

C.  **Claims Arising at RSP and BSP**

Plaintiff's amended complaint also describes events that allegedly occurred at RSP and BSP. However, RSP and BSP are located in Hardwick, Baldwin County, Georgia. Baldwin County falls within the jurisdiction of the United States District Court for the Middle District of Georgia. See 28 U.S.C. § 90(b)(2). As previously discussed, the Court has determined that the GDC should be dismissed from this case, and thus, Plaintiff's claims arising from his incarceration at WSP, RSP, and BSP stand alone. Therefore, the Court also concludes the Middle District of Georgia is the proper venue for any potential claims related to Plaintiff's incarceration at RSP and BSP because that District is the location of these

alleged events. See 28 U.S.C. § 1391(b). Accordingly, Plaintiff's claims related to his incarceration at RSP and BSP should be dismissed, without prejudice, so that Plaintiff may, if he chooses, bring those claims in the United States District Court for the Middle District of Georgia.

D.  **Protocol and Grievance Claims**

Plaintiff's claims related to the handling of his grievances and the adherence to WSP protocol fail to state a claim upon which relief may be granted. "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of

7

a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff alleges that Defendant Kemp and the WSP staff refused to address his grievances according to the standard operating procedure, hindered his grievances, or denied his grievances. (Doc. no. 10, p. 6). Plaintiff also contends that, pursuant to WSP protocol, he should have been provided with "outside medical attention," if the WSP medical staff could not treat his injuries. (Id.). However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Similarly, "§ 1983 merely provides a mechanism for enforcing individual rights 'secured' elsewhere, i.e., rights independently 'secured by the *Constitution and laws' of the United States*," and thus, alleged violations of prison protocol are not actionable under § 1983. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002) (emphasis added). Therefore, Plaintiff's claims pertaining to alleged violations of WSP protocol or the handling of his grievances fail as a matter of law.

8

E.  **Retaliation Claims**

Plaintiff submits that, while he was incarcerated at WSP, he was retaliated against for reporting his injury and filing reports. Under the First Amendment, prison officials may not retaliate against inmates for filing lawsuits or administrative grievances. Farrow v. West, 320 F.3d 1235, 1248 (11th Cir. 2003). A prisoner may state a cognizable § 1983 claim by alleging that the actions of prison officials "that might not otherwise be offensive to the Constitution" may be brought "within the scope of the Constitution by alleging that the actions were taken in retaliation for filing lawsuits and administrative grievances." Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986). In Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005), the Eleventh Circuit clarified the standard for asserting a cognizable retaliation claim: "A plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from exercise of First Amendment rights." Id. at 1254.

In this case, Plaintiff maintains that, while he was incarcerated at WSP, he was confined in administrative segregation for approximately two months after reporting his injuries and that he received disciplinary reports after requesting that the air conditioning unit, which allegedly caused his injury, be fixed. (Doc. no. 10, pp. 5-6). However, Plaintiff does not indicate who allegedly confined him in administrative segregation or issued the reports. Plaintiff also fails to indicate which, if any, named Defendants instigated, or had direct knowledge of, the alleged retaliatory conduct. Simply put, Plaintiff presents no facts supporting his retaliation claims; Plaintiff merely submits a general allegation that he was

9

retaliated against as a result of his reports and grievances.[4] Therefore, Plaintiff has failed to state a viable retaliation claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) ("In civil rights . . . actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory.").

F.     **Deliberate Indifference Claims**

Plaintiff also fails to state viable claims related to his slip and fall on a wet floor at WSP or the alleged denial of medical treatment that followed. The Eighth Amendment proscribes only deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To make a valid deliberate indifference claim under the Eighth Amendment concerning his conditions of confinement, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety; officials "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." Id. at 837. To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

Plaintiff's claims concerning the air conditioning unit and the alleged denial of medical care are vague and conclusory, and therefore, insufficient to state viable deliberate indifference claims. See Graddick, 739 F.2d at 556-57 (noting that vague and conclusory

---

[4]The Court notes that Plaintiff has attached a statement, apparently submitted by another inmate at BSP, describing alleged incidents of retaliation that he, and other inmates, have been subjected to by the BSP staff. (Doc. no. 1, p. 10). None of the alleged retaliatory practices occurred at WSP.

10

accusations are insufficient to state a civil rights claim). Although Plaintiff contends that Defendant Kemp and the maintenance staff knew, or should have known, about the air conditioning unit leak because several reports were filed, Plaintiff fails to allege to whom the reports were directed, or whether the reports were even seen by Defendant Kemp. Furthermore, Plaintiff fails to allege how any particular Defendant specifically exhibited deliberate indifference to his serious medical needs. As such, Plaintiff fails to provide facts sufficient to state viable deliberate indifference claims. See Crawford-El v. Britton, 523 U.S. 574, 598 (1998) (noting that plaintiffs must "put forward specific, nonconclusory factual allegations that establish improper motive causing cognizable injury"). "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted).

In the absence of an allegation of any connection between the actions of any particular Defendant with the alleged unconstitutional deprivations, Plaintiff fails to state a claim for relief against any named Defendants. Rather, it appears that Plaintiff is merely alleging simple negligence concerning the maintenance of the air conditioning unit and expressing dissatisfaction with the procedure for receiving treatment at WSP. Accordingly, Plaintiff has failed to state viable deliberate indifference claims.

### G.     *Respondeat Superior* Claims

To the extent Plaintiff blames Defendant Kemp, as Warden of WSP, for the alleged constitutional violations of other individuals, such an allegation fails to state a claim upon which relief can be granted. "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious

liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor/employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). Here, although Plaintiff contends that Defendant Kemp knew, or should have known, about the air conditioning unit, Plaintiff has not alleged that Defendant Kemp was personally involved in the air conditioning unit's maintenance. Nor has Plaintiff alleged that Defendant Kemp was personally involved in Plaintiff's medical treatment, Plaintiff's confinement in isolation, or the issuance of disciplinary reports.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Kemp and the alleged constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[5] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman,

---

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).

In this case, Plaintiff has not alleged the necessary causal connection, with respect to Defendant Kemp, to hold him liable for the alleged constitutional violations of other individuals. Plaintiff has proffered no facts suggesting that Defendant Kemp was responsible for a custom or policy which resulted in the alleged failure to properly maintain the air conditioning unit, Plaintiff's confinement in administrate segregation, or the purported denial of medical treatment. Although Plaintiff contends that Defendant Kemp knew, or should have known, about the allegedly leaking air conditioning unit, Plaintiff has not alleged that Defendant Kemp knew about any widespread maintenance issues, or abuses related to confinement in isolation, issuance of disciplinary reports, or denial of medical treatment. Simply put, Plaintiff's conclusory accusations are insufficient to demonstrate that there was a causal connection between Defendant Kemp's actions and the alleged constitutional violations. See Fullman, 739 F.2d at 556-57 ("In civil rights . . . actions, courts have recognized that more than mere conclusory notice pleading is required. In civil rights actions, it has been held that a complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory."). As such, Plaintiff has failed to state a claim against Defendant Kemp based on his position as Warden of WSP.

H.  **State Law Claims**

Moreover, because Plaintiff has failed to state a federal constitutional claim against Defendants, his remaining potential state law claims should also be dismissed because the Court lacks jurisdiction to entertain these claims. This Court derives its authority to decide Plaintiff's § 1983 federal claims from 28 U.S.C. § 1331, which provides that district courts have original jurisdiction over civil actions "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Federal courts are given the additional power to exercise supplemental jurisdiction over state law claims which "form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, § 1367(c)(3) states that "[t]he district courts may <u>decline</u> to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction. . . ." <u>Id.</u> § 1367(c)(3) (emphasis added).

The Eleventh Circuit has explicitly advised that a district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists:

> At this time, the case retains no independent basis for federal jurisdiction. . . . A proper resolution of the two state law causes of action will require a careful analysis of Alabama law--something the courts of Alabama are in the best position to undertake and, for reasons of federalism, should undertake. . . . We conclude that the district court should dismiss the state law claims so that Appellee may pursue them in state court.

<u>Nolin v. Isbell</u>, 207 F.3d 1253, 1258 (11th Cir. 2000); <u>see also</u> <u>Republic of Panama v. BCCI Holdings (Luxembourg) S.A.</u>, 119 F.3d 935, 951 n.26 (11th Cir. 1997) ("After dismissing Panama's federal claims against the . . . defendants, the district court correctly dismissed its remaining state law claims against these defendants."); <u>Rice v. Branigar Org., Inc.</u>, 922 F.2d

14

788, 792 (11th Cir. 1991) (recognizing that trial court's decision to exercise pendant jurisdiction over state law claims is discretionary).

Here, as the Court has determined that the claims serving as the basis for original federal court jurisdiction should be dismissed, the Court also concludes that any potential state law claims should be dismissed without prejudice so that Plaintiff may, if he chooses, pursue them in state court.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants FNU White, Captain, FNU Du, Medical Personnel, and the GDC be **DISMISSED** from this case, that Plaintiff's grievance, protocol, retaliation, deliberate indifference, and *respondeat superior* claims arising at WSP be **DISMISSED**, that Plaintiff's potential state law claims and potential claims related to his incarceration at RSP and BSP be **DISMISSED** without prejudice, and that this civil action be **CLOSED**.

SO REPORTED and RECOMMENDED on this 28th day of December, 2007, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE